UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PRINCE MCCOY, § | |
| TDCJ #00852958, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-17-763 |
| § | |
| J. ESQUIVEL, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

On January 11, 2018, the Court stayed and administratively closed this case pending the resolution of Plaintiff Prince McCoy's appeal of the Court's grant of a non-dispositive motion (Docket Entry No. 34). On January 19, 2018, the United States Court of Appeals for the Fifth Circuit dismissed the appeal on McCoy's motion. *See* Docket Entry No. 36. McCoy has filed two motions to reinstate this case (Docket Entry Nos. 37 & 38). Also pending are cross motions for summary judgment (Docket Entry Nos. 15 & 25). The Court concludes that this case should be **REINSTATED** and the **STAY** should be **LIFTED**, and that the cross motions for summary judgment are now ripe for adjudication. After considering the pleadings, motions, responses, evidence on file, and applicable law, the Court concludes as follows.

### I. BACKGROUND

Plaintiff Prince McCoy ("McCoy") alleges that on January 8, 2016, around 6:30 a.m. at the Wynne Unit of the Texas Department of Criminal Justice, he notified Defendant Javier Esquivel ("Esquivel") that he needed medical attention because he thought his blood sugar was low.[1] McCoy claims that Esquivel made remarks of a sexual nature and propositioned him, but

---

[1] Docket Entry No. 1 ("Complaint") at 4, 9. Unless otherwise noted, the citations to the record reflect the

that McCoy declined his advances.[2] McCoy alleges that later that same morning at around 9:25 a.m., Esquivel came to his cell and asked him if he was going to medical, and McCoy indicated that he was.[3] Officer Scott escorted him in handcuffs to the medical department and then to court.[4] After court, McCoy again asked to go to medical because he felt that his blood sugar was low and needed to be checked, so Officer Scott asked medical personnel and they said that they could not check McCoy's blood sugar right then because they did not have the machine at that time.[5] Esquivel, who was with McCoy and Officer Scott, then instructed McCoy to go to his cell.[6] McCoy told Esquivel that he needed medical treatment, and Esquivel assumed that McCoy was refusing to go to his cell.[7] McCoy states that he could not go to his cell because he was dizzy and faint and told Officers Scott and Esquivel that they would have to carry him up the stairs.[8] At that point, McCoy was leaning against the wall.[9] Officer Scott let go of McCoy's arm and McCoy "was falling to the ground, and the Officer Mr. Esquivel assumed [McCoy] was jerking away and pushed [him] to the ground hitting [his] head to the concrete floor."[10] McCoy also states that he came to when he was on the floor and then was taken to the medical

---

Clerk's pagination on the CM/ECF docket entry cited.

[2] *Id.* at 4, 9.

[3] *Id.* at 9.

[4] *Id.* at 9-10.

[5] Docket Entry No. 18 at 9 (McCoy's Declaration).

[6] *Id.*

[7] Docket Entry No. 17-1 (Ex. A) at 15, Bates 000013 ("McCoy's Use of Force Statement") at Answer f.

[8] *Id.*; *see also* Complaint at 4.

[9] Complaint at 10.

[10] McCoy's Use of Force Statement at Answer h.

department, where Nurse Landry tested his sugar levels and discovered that they were low.[11] Nurse Landry gave McCoy peanut butter and glucose and monitored his blood sugar for 2 ½ hours until his blood sugar rose to a normal level.[12]

The medical records reflect that McCoy sustained a bruise on the right frontal lobe of his head because of the incident.[13] He sought medical treatment two days later for a headache.[14] He claims that his damages include impairment of reputation, personal humiliation, mental anguish, pain and suffering, inconvenience, shock, discomfort, loss of enjoyment of life, frequent migraine headaches and nightmares, and intentional infliction of emotional distress.[15]

Esquivel moves for summary judgment, asserting that the Eleventh Amendment bars any claims against him for monetary damages in his official capacity and that he is entitled to qualified immunity for the claims against him in his individual capacity (Docket Entry No. 15). Esquivel also contends that McCoy has failed to raise a genuine issue of material fact regarding a violation of the Eighth Amendment. McCoy also filed a motion for summary judgment in which he contends that fact issues regarding the use of force remain (Docket Entry No. 25).

## II. SUMMARY JUDGMENT STANDARD

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of

---

[11] *Id.*

[12] *Id.*; McCoy's Use of Force Statement at Answer f; *see also* Docket Entry No. 17-1 at 19, Bates 000017 (Scott Use of Force Witness Statement).

[13] *See* Docket Entry No. 17-2 ("Ex. C") at 12-19 (McCoy's medical records from 1-10-16).

[14] *See id.*

[15] Complaint at 12.

initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

"Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### III. <u>OFFICIAL CAPACITY CLAIMS</u>

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. Federal court jurisdiction is restricted by the Eleventh Amendment and the principle of sovereign immunity that it embodies. *See Seminole Tribe of Florida v. Florida*, 116 S. Ct. 1114, 1122 (1996); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 104 S. Ct. 900, 908-09 (1984) (explaining that the Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court).

To the extent that McCoy seeks monetary damages from Esquivel in his official capacity as a TDCJ employee, his claims must be dismissed because they are precluded by the Eleventh

Amendment to the United States Constitution. Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).

As a state agency, TDCJ is immune from a suit for money damages under the Eleventh Amendment. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The Eleventh Amendment also bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Because McCoy has sued Esquivel for actions taken during the course of his employment by TDCJ, McCoy's claims for monetary damages against him in his official capacity are barred by the Eleventh Amendment. Accordingly, Esquivel's motion for summary judgment will be granted on this issue.

## IV. INDIVIDUAL CAPACITY CLAIMS

Esquivel contends that McCoy fails to establish that any constitutional violation occurred or that Esquivel's actions were objectively unreasonable under the circumstances. Esquivel maintains, therefore, that he is entitled to qualified immunity.

### A. Excessive Force Under the Eighth Amendment

Claims of excessive use of force in the prison context are governed by the Eighth Amendment, which prohibits cruel and unusual punishment, *i.e.,* the "unnecessary *and wanton* infliction of pain." *Wilson v. Seiter*, 510 U.S. 294, 297 (1991) (emphasis added) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Not every malevolent touch by a prison guard gives rise to a constitutional violation under the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove,

even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). Although the extent of the injury suffered is relevant to the Eighth Amendment analysis, the "'core judicial inquiry'" in an excessive force claim is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7).

The United States Supreme Court has held that the following non-exclusive factors are relevant to the evaluation of an excessive-use-of-force claim: (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. In applying the *Hudson* factors, courts must remember "that prison officials 'may have had to act quickly and decisively.'" *Baldwin v. Stalder,* 137 F.3d 836, 840 (5th Cir. 1998) (citation omitted). Moreover, "[t]he amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id.* (citation omitted). The Court considers each of these factors below.

1. **Extent of Injury**

The nurse who examined McCoy immediately after the use of force documented redness or a bruise on the right side of his head.[16] The medical records indicate that McCoy was ambulatory and stable after the incident, and his chief complaint on the day of incident was that he thought his blood sugar was low.[17] He denied having any pain at the time of the examination

---

[16] Ex. C at 4, Bates 000033; *id.* at 12, Bates 000041 (McCoy's medical records) (under seal).

[17] *Id.* at 3, Bates 000032.

on January 8, 2016.[18] Two days later, McCoy returned to medical complaining of a headache.[19] The medical records reflect that he had a fading bruise to the right frontal lobe with no raised areas or hematomas visible.[20] The records also indicate that McCoy was alert and oriented with no distress noted.[21]

Although the absence of a serious injury is not dispositive to the Eighth Amendment excessive force analysis, it is a relevant factor that "may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins*, 559 U.S. at 37 (citations omitted). To support an excessive force claim, "a prisoner must have suffered from the excessive force a more than *de minimis* physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).

Here, McCoy's head injury is consistent with a take-down by a guard to the floor. It is undisputed that McCoy had a bruise on the right side of his head, and the medical records and color pictures reflect that there was no external bleeding or raised areas on the skull.[22] The day of the incident, McCoy's chief complaint concerned his blood sugar levels, and the medical records noted that he "denies having any pain at this time."[23] Although McCoy did seek medical attention for a headache two days later, medical records show that the medical assessment at that

---

[18] *Id.* at 4, Bates 000033.

[19] *Id.* at 12, Bates 000041.

[20] *Id.*

[21] *Id.* at 19, Bates 000048.

[22] *See generally* Ex. C; *see also* Docket Entry No. 15-1 ("Ex. B") at 2-5 (color photographs of McCoy after Use of Force).

[23] Ex. C at 3-4, Bates 000032-33.

time showed that there were no adverse effects from the use of force.[24] McCoy had a right frontal lobe bruise or redness, but no raised areas or visible hematomas, and McCoy was alert and oriented with normal vital signs.[25] The Court concludes that McCoy does not raise a fact issue that he suffered more than a *de minimis* injury from the use of force. Therefore, the first *Hudson* factor strongly favors Esquivel. *See Wilkins*, 559 U.S. at 37.

### 2. Need for Force

Esquivel asserts that McCoy's own statements undermine his excessive force claim. McCoy denies that he ever stated that he leaned away from Esquivel, but acknowledges that he "went down in a crouching position" after Officer Scott let his arm go[26] and stated on the day of the incident that he "felt dizzy and was falling to the ground" and that Esquivel "assumed [McCoy] was jerking away."[27] Although McCoy asserts that Esquivel submitted a false statement to cover up the incident, both McCoy's and Esquivel's statements right after the use of force agree that Esquivel assumed or perceived that McCoy's movement toward the ground was an attempt to jerk away or pull away from Esquivel.[28] Further, McCoy also stated that when Esquivel told him to return to his cell, McCoy told him he had to go to medical instead, which Esquivel also perceived as a refusal to comply with an order.[29]

Preserving institutional order and discipline is a central objective of sound prison

---

[24] *Id.* at 12, Bates 000041.

[25] *Id.*

[26] *See* Complaint at 4.

[27] McCoy's Use of Force Statement at Answer h.

[28] *Cf.* McCoy's Use of Force Statement at Answer h ("Officer Mr. Esquivel assumed I was jerking away") *with* Ex. A at 14, Bates 000012 ("Esquivel's Use of Force Statement") at Answer f.

[29] *See* McCoy's Use of Force Statement at Answer f ("I told the officer I needed medical treatment and he assumed I was refusing to go to my cell but I couldn't.").

administration. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."). Esquivel contends that his response to an offender pulling away from him and refusing to comply with his order to return to his cell required Esquivel to restrain McCoy on the floor. Esquivel states that he used downward pressure to restrain McCoy, and McCoy's bruise on his head is consistent with his head hitting the floor in such a take-down. Although McCoy contends that Esquivel did not need to restrain him because he was in a weakened state due to low blood sugar, McCoy does not show that Esquivel's actions were not designed to restore order and gain his compliance with the order to return to his cell. This factor favors Esquivel.

### 3. Relationship of the Need for Force and the Amount of Force Used

McCoy contends that the amount of force was excessive in the situation. By his own account, McCoy had moved towards the floor in a crouching position when Officer Scott let go of his arm. As indicated above, Esquivel perceived McCoy's actions as refusing his order to go back to his cell. There is no indication that this was more than a single, brief encounter that resulted in *de minimis* injury to an inmate who appeared to be moving away from his escort and refusing to comply with orders. The amount of force used under the circumstances was proportionate to the perceived need. This factor also favors Esquivel.

### 4. Reasonably Perceived Threat

As noted above, Esquivel perceived that McCoy was "jerking away" and refusing to comply with orders. McCoy contends that he was not a threat, but acknowledges that he moved towards the ground after Esquivel said "Come on" and that he wanted to go to medical instead of

going back to his cell. As discussed, Esquivel interpreted this action as a refusal to comply with his instructions and decided he needed to gain McCoy's compliance.

McCoy points out that he was handcuffed at the time, lacked energy, and had nowhere to flee. However, his movement to the floor while being escorted resulted in the quick reaction by Esquivel to restrain him. Esquivel indicated on his statement that he did not attempt to reason with McCoy, secure the area, listen to the offender, or notify a supervisor because time did not allow.[30] McCoy states that he was dizzy and moving towards the floor; the quick action from Esquivel, under the circumstances, was reasonable. This factor favors Esquivel.

### 5. Efforts to Temper the Forceful Response

There is no indication that this was anything more than a brief episode involving a single movement from Esquivel to get McCoy to the floor to gain his compliance. As soon as the incident occurred, Sergeant Jefferson, the supervisor, ordered two other officers to relieve Esquivel so that they could assist McCoy to his feet and take him to the medical department immediately. McCoy does not explain what other efforts should have been used to temper the response. Accordingly, this factor also favors Esquivel.

A review of the five above-referenced *Hudson* factors shows that Esquivel used brief, limited force after he perceived that McCoy was jerking away or moving away from him and refusing to comply with orders to return to his cell. McCoy does not raise a fact issue that the force used was done maliciously or sadistically to inflict pain rather than in a good faith effort to maintain or restore discipline. Accordingly, McCoy does not raise a fact issue that his constitutional rights were violated in connection with the use of force.

---

[30] Esquivel's Use of Force Statement at Answer c, Bates 000011.

B. **Deliberate Indifference**

To demonstrate deliberate indifference to his serious medical needs, a plaintiff must plead facts that indicate that the defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or "engaged in any similar conduct that would evince a wanton disregard for any serious medical need." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). A delay in medical care can rise to the level of a constitutional violation only if the delay is occasioned by deliberate indifference resulting in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). "[T]he 'failure to alleviate a significant risk that [the Defendants] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). A violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's . . . safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In other words, "deliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Rather, "[i]t is the 'obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment], whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Bradley v. Puckett*, 157 F.3d at 1025 (citation omitted).

To the extent that McCoy alleges that Esquivel was deliberately indifferent to his serious medical needs regarding his blood sugar level, McCoy does not plead facts to show that Esquivel was aware that McCoy's possible low blood sugar posed a serious risk of substantial harm to

11 / 14

McCoy or that he disregarded that risk. *See Domino*, 239 F.3d at 756 (holding that there was no deliberate indifference where an official should have perceived a significant risk, but did not). Moreover, by McCoy's own account, he was treated for low blood sugar immediately after the use of force and was monitored in the medical department until his sugar levels were normal. There is no indication that a delay, if any, in his blood sugar assessment and treatment caused him substantial harm. Accordingly, he does not show a violation of his Eighth Amendment rights in connection with his medical care. *See Mendoza*, 989 F.2d at 195.

C. **Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This is an "exacting standard," *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015), that "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

If the plaintiff satisfies both prongs of this inquiry, the court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established when the disputed action occurred. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Whether an official's conduct was objectively

reasonable is a question of law for the court, not a matter of fact for the jury." *Id.* (citation omitted). "An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight." *Id.* (citation omitted). Thus, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id.* at 654 (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

A reviewing court may consider the steps of the qualified immunity analysis in any sequence. *See Pearson*, 555 U.S. at 236; *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Here, the Court first considers whether Esquivel violated McCoy's constitutional rights and then considers whether McCoy meets his burden to show that Esquivel, under the circumstances that confronted him and the facts available to him, acted in an objectively unreasonable manner to violate clearly established law that every reasonable officer would have known.

As noted above, McCoy does not raise a fact issue that Esquivel violated any of his Eighth Amendment rights, and, therefore, McCoy does not meet his burden to overcome Esquivel's entitlement to qualified immunity. Even if McCoy had raised a fact issue regarding a constitutional violation, consideration of the *Hudson* factors discussed above supports a finding

that Esquivel's actions were objectively reasonable in light of clearly established law. All indications in the record show that this encounter was a brief, single event in response to an unexpected movement to the floor by McCoy. McCoy does not raise a fact issue that Esquivel acted in an objectively unreasonable manner given all of the circumstances detailed above. Therefore, McCoy does not meet his burden to overcome Esquivel's assertion of qualified immunity and this case must be dismissed.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Plaintiff McCoy's motions for reinstatement of this case (Docket Entry Nos. 37 &38) are **GRANTED**, and this case is **REINSTATED** and the **STAY** is **LIFTED**.

2. Defendant Esquivel's motion for summary judgment (Docket Entry No. 15) is **GRANTED**, and Plaintiff's cross motion for summary judgment (Docket Entry No. 25) is **DENIED**.

3. All other pending motions, if any, are **DENIED**.

4. This case is **DISMISSED** with prejudice.

5. A separate Final Judgment shall issue.

The Clerk will send a copy of this Order to the parties.

SIGNED at Houston, Texas, this 12th day of July, 2018.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE